## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## Judge William J. Martínez

Civil Action No. 19-cv-3332-WJM-SKC

LORENZO PHILLIPS, by and through his Guardian Ad Litem, ANITA DEADWYLER,

    Plaintiff,

v.

CLARENCE MISER, and
C.R. ENGLAND,

    Defendants.

---

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

In this negligence action, Plaintiff Lorenzo Phillips, by and through his guardian ad litem, Anita Deadwyler ("Plaintiff") sues Defendants Clarence Miser and C.R. England (jointly, "Defendants") after a motor vehicle accident that left Plaintiff severely injured on September 4, 2016.

This matter is before the Court on Defendants' Motion for Summary Judgment ("Motion"), filed on August 27, 2020. (ECF No. 39.) For the reasons explained below, the Motion is denied.

### I. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. BACKGROUND

### A. Factual Allegations[1]

On September 3, 2016, Rami Kanafani drove Plaintiff and Trevon Andre Barlow to a friend's house in Fort Collins, where the individuals shared a full bottle of Captain Morgan's rum with their friend.  (ECF No. 39 at 3 ¶¶ 1, 3–4.)  At around 10:00 p.m., Plaintiff, Kanafani, and Barlow went to a bar called The Rec Room, where they shared "three to four rounds of lemon drop shots, long island iced teas, and cranberry juice and vodka mixed drinks."  (*Id.* ¶¶ 5–6.)

---

[1] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof.  These facts are undisputed unless attributed to a party or source.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

In the early morning of September 4, 2016, Kanafani drove his Mazda 3 southbound on I-25 from Fort Collins to Aurora and Denver.  (*Id.* ¶ 9.)  Kanafani was intoxicated and driving at 111 miles per hour in an area with a speed limit of 55 miles per hour.  (*Id.* ¶¶ 9–12.)  Plaintiff was asleep in the backseat of Kanafani's vehicle and Barlow sat in the front seat of the vehicle.  (*Id.* ¶¶ 13–14.)  Neither Plaintiff nor Barlow wore seatbelts.  (*Id.* ¶ 15.)  At the same time, Miser, in the course and scope of his employment, was driving a C.R. England semi-tractor trailer southbound on I-25 at 60 miles per hour.  (*Id.* ¶ 16.)

Miser and Kanafani dispute the circumstances that led to Kanafani's vehicle colliding with the rear passenger side of Miser's vehicle around Exit 221 and 104th Avenue.  (*Id.* ¶ 27.)  At 5:54 a.m. on September 4, 2016, Miser gave the following written statement:

> Heading South on I-25, speed limit switch from 65 to 55[,] I slowed down to the limit after it change[d] f[rom] 2 lanes to 3 lanes.  I got it to the middle lane because I had to take a[n] exit 4 miles up on the road, which is exit 217B to I-270E which is also on the left side.  Around exit 221 I felt a jolt [from] the back.  I looked back thinking I popped a tire, but notice[d] [some]thing falling from the sides so I pulled over and looked back and [saw] a car on the side of the road.  Ran back to see 2 people [o]n the front side, I f[l]agged down a car and told her to [call] 911.  [T]he pass[enger] was moving a little.  I told him not to move, few min[utes] later I s[aw] the flashing [r]ed/[b]lue lights.

(ECF No. 61 at 4 ¶ 3.)  In a subsequent declaration, Miser clarified that he "changed lanes to the middle lane where I-25 changes from two to three lanes," and did not

3

thereafter switch lanes.[2]  (ECF No. 39-10.)  Miser has "since learned I-25 goes from two to three lanes close to milepost marker 244," *i.e.*, 23 miles before the collision site.  (*Id.*)

In a sworn affidavit, Kanafani states:

> I was in the 3rd lane of southbound I-25 and the C.R. England truck was in the 4th lane (the right-hand lane).
>
> After the overpass for 112th/Community Center Drive, the speed limit changed from 65 mph to 55 mph and the C.R. England truck was in the right-hand lane.
>
> As I approached the C.R. England truck, it made a sudden and quick lane change from the 4th lane into the lane I was in (the 3rd lane).
>
> I was traveling a high rate of speed, and the sudden lane change cut me off, so I had to swerve to avoid the truck. I swerved to the right and hit the right rear corner of the C.R. England trailer.
>
> If the C.R. England truck had not made the sudden and unsafe lane change into my lane, the accident would not have occurred.

(ECF No. 58-1 ¶¶ 9–14.)

Miser's vehicle was completely in the middle lane at the time of the collision and no other vehicles were driving in the other traffic lanes.  (*Id.* ¶¶ 29–30.)  Unfortunately, the collision caused Plaintiff to suffer severe, life-long injuries.  (*Id.* ¶ 33.)

Plaintiff sues Miser for negligence and negligence per se based on Colorado Revised Statutes §§ 42-4-1402 (careless driving) and 42-4-1007 (driving on roadways

---

[2] This version of events is consistent with Miser's statement to the Northglenn Police Department.  (*See* ECF No. 58-3 at 4 ("Clarence had been traveling in the 'middle lane' of traffic, continually, and he had not made a lane change 'for at least ten minutes before the accident.'").)

laned for traffic) and sues C.R. England under a theory of *respondeat superior*. (ECF No. 7 ¶¶ 36–57.)

Defendants filed the Motion on August 27, 2020. (ECF No. 39.) Plaintiff responded on November 3, 2020 (ECF No. 58), and Defendants replied on November 17, 2020 (ECF No. 61).

### III. ANALYSIS

**A.     Evidentiary Objections**

While the parties make numerous evidentiary objections, the Court must only address the objections to Kanafani's affidavit at this time, as it is the only evidentiary objection that is relevant to the resolution of the Motion.

At the summary judgment stage, evidence need not be submitted "in a form that would be admissible at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Parties may, for example, submit affidavits in support of summary judgment, despite the fact that affidavits are often inadmissible at trial as hearsay, on the theory that the evidence may ultimately be presented at trial in an admissible form. *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). Nonetheless, "the content or substance of the evidence must be admissible." *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995). Thus, for example, at summary judgment a court should disregard inadmissible hearsay statements contained in affidavits, as those statements could not be presented at trial in any form. *See Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1082 n.5 (10th Cir. 1999).

The requirement that the substance of the evidence must be admissible is not

only explicit in Rule 56, which provides that "[s]upporting and opposing affidavits shall . . . set forth such facts as would be admissible in evidence," Fed. R. Civ. P. 56(e), but also implicit in a court's role at the summary judgment stage. To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury. *See Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1216 (10th Cir. 2004) (affirming summary judgment, in light of the available evidence, because "[j]ury verdicts may not be based on speculation or inadmissible evidence or be contrary to uncontested admissible evidence"). The Tenth Circuit reviews a district court's evidentiary rulings at the summary judgment stage for abuse of discretion. *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citing *Jones v. Barnhart*, 349 F.3d 1260, 1270 (10th Cir. 2003)).

Defendants argue that Kanafani's affidavit is inadmissible hearsay and that Plaintiff cannot present Kanafani's live testimony as evidence at trial because "Mr. Kanafani is in Saudi Arabia and unable to return to the U.S. to testify." (ECF No. 61 at 5–6, 9.) Specifically, Defendants argue that Kanafani "cannot renew his DACA (Deferred Action for Childhood Arrivals) [status] in order to return to the United States." (*Id.* at 9–10.) However, in the Proposed Pretrial Order, Plaintiff has identified Kanafani as a trial witness who "will testify in person." (ECF No. 73 at 6.)

The Court assumes that Plaintiff's counsel is aware of and is complying with his Rule 11 obligations in representing to the Court that Kanafani will testify in person at

trial. Based solely on this representation, the Court cannot conclude that Kanafani's affidavit is inadmissible hearsay.

Defendants also argue that "[a]ny reliance on Mr. Kanafani's [a]ffidavit . . . would be substantially prejudicial to Defendants given [that] . . . Defendants have had no opportunity to cross examine him."[3] (ECF No. 61 at 11.)

According to the scheduling order, Rule 26(a)(1) disclosures were due on January 10, 2020 and discovery closed in September 2020. (ECF No. 20 at 4, 8.) On September 8, 2020, Plaintiff's counsel informed Defendant's counsel that "[w]e know where Mr. Kanafani is at this time and are working to get an affidavit from him" and that they were "working [through] a third party to communicate with him." (ECF No. 61-5.) Nonetheless, despite Defendants' requests that Plaintiff disclose Kanafani's contact information and/or the identity of the third-party through whom Plaintiff's counsel was communicating, Plaintiff's counsel waited until November 3, 2020—the same day as he submitted his response to the Motion—to serve a supplemental Rule 26(a)(1) disclosure containing Kanafani's e-mail address.[4] (ECF No. 61-4).

The Court agrees that there is an inherent unfairness resulting from the late disclosure of Kanafani's contact information and the fact that Defendants have not been able to depose Kanafani. However, Defendants did not file a motion to strike Kanafani's

---

[3] The record reflects that Defendants' counsel noticed Kanafani for a deposition on June 24, 2020. (ECF No. 61-6.) In the Proposed Final Pretrial Order, Defendants represent that they "have made every effort to locate Mr. Kanafani in order to take his deposition but have been unable to do so because of his current immigration status." (ECF No. 73 at 14–15.)

[4] The Court notes that Kanafani's affidavit was signed on October 19, 2020. (ECF No. 58-1 at 2.) This suggests that Plaintiff's counsel had contact with Kanafani more than two

7

affidavit as a sanction for Plaintiff's untimely Rule 26(a)(1) disclosures.  The Court is likewise unaware of any authority allowing it to decline to consider a witness's affidavit on the basis that the witness has refused to speak with counsel, particularly where the witness resides beyond the subpoena power of the United States.

The Court will therefore consider Kanafani's affidavit in connection with the Motion.  However, Plaintiff's counsel is on notice that the Court has a very dim view of, and will not in the future tolerate, this kind of bush league gamesmanship.

**B.    Negligence Claim**

To sustain a claim for negligence, a plaintiff must prove the existence of a legal duty owed by a defendant to a plaintiff, a breach of that duty, injury to the plaintiff, and a sufficient causal relationship between the defendant's breach and the plaintiff's injury. *See Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316, 1320 (Colo. 1992) (en banc). Drivers have a duty to drive with reasonable care under the circumstances.  *Kendrick v. Pippin*, 252 P.3d 1052, 1062 (Colo. 2011), *abrogated on other grounds by Bedor v. Johnson*, 292 P.3d 924 (Colo. 2013).

Plaintiff contends that Miser acted negligently and breached his duty to drive with reasonable care when he changed lanes without properly determining whether he could do so safely.  (*See* ECF No. 7 ¶¶ 36–44.)

Defendants argue that they are entitled to summary judgment on Plaintiff's negligence claim because "there is no evidence to support [an argument that Miser]

---

weeks before Plaintiff's counsel served his supplemental Rule 26(a)(1) disclosure.

breached any duty owed to Plaintiff or that any alleged breach by Mr. Miser was the proximate cause of the accident." (ECF No. 39 at 8.)

1.  Breach of Duty

Defendants argue that Plaintiff cannot prove that Miser breached any duty owed to Plaintiff because there is no evidence that he made an unsafe lane change. (*Id.* at 9.) Specifically, they argue that "[a]t the time Mr. Kanafani rear ended Mr. Miser's trailer, Mr. Miser had been traveling in the middle lane for 23 miles." (*Id.*) They also cite an expert report compiled by William M. Bortles, a principal accident reconstructionist, to argue that Miser did not breach his duty to drive with reasonable care even if he had made a lane change just prior to the collision:

> A peer-reviewed study has been published that examined the timing associated with tractor-trailer combinations performing lane changes. This study concluded that, on average, tractor-trailers complete right-to-left lane changes in 8.03 seconds, with a standard deviation of 1.66 seconds. Including 0.5 seconds for a mirror glance/limb movement, it is likely that a hypothetical right-to-left lane change in a tractor-trailer combination would take between 6.87 to 10.19 seconds. The closing speed between Mr. Kanafani's Mazda (~111 mph) and Mr. Miser's tractor-trailer (~60 mph), was approximately 51 mph, or approximately 75 feet per second. If we were to suppose that Mr. Miser had performed a lane change just prior to the crash, Mr. Kanafani would have been approximately 640 ± 124 feet behind the tractor-trailer. It would have been reasonable for Mr. Miser to perform a hypothetical lane change given a gap of two football fields. It is only due to the excessive closing speed of Mr. Kanafani that this hypothetical situation could result in conflict.

(ECF No. 39-4 at 25.)

Without Kanafani's affidavit, the Court quite easily would have granted the instant Motion on the basis that there is no genuine issue of material fact supporting Plaintiff's

claim that Miser breached his duty to drive with reasonable care. However, Kanafani has signed a sworn statement representing that Miser made a "sudden and quick lane change from the 4th lane into the [3rd lane]," which caused Kanafani to "swerve to avoid the truck." (ECF No. 58-1 at 2 ¶¶ 11–12.) As a key witness to the events underlying this litigation, Kanafani's statement creates a material factual dispute regarding whether Miser breached his duty to drive with reasonable care.[5]

### 2. Proximate Cause

"[A] finding of negligence does not create liability on the part of a defendant unless that negligence is a proximate cause of the plaintiff's injury." *City of Aurora v. Loveless*, 639 P.2d 1061, 1063 (Colo. 1981) (en banc). "Proximate cause" is "a cause which in natural and probable sequence produced the claimed injury" and "without which the claimed injury would not have been sustained." *People v. Stewart*, 55 P.3d 107, 116 (Colo. 2002) (en banc). However, "[u]nlawful conduct that is broken by an independent intervening cause cannot be the proximate cause of injury to another." *Id.* at 121; *see also Smith v. State Comp. Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987) (recognizing that "if an event other than the defendants' negligence appears predominant, the defendants' negligence cannot be considered a substantial factor").

---

[5] The Court notes that Kanafani, who was under the influence of alcohol at the time of the accident and made multiple false statements when questioned by the police, may not be an entirely credible witness. (*See, e.g.*, ECF No. 39-2 at 3, 6 (after the accident, Kanafani informed Officer Carey that "I wasn't driving" and informed Officer Schranz that he had only had a single drink on the evening of September 3, 2016).) Nonetheless, "[o]n summary judgment, a district court may not weigh the credibility of the witnesses." *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008); *Eagle v. La. & S. Life Ins. Co.*, 464 F.2d 607, 608 (10th Cir. 1972) ("Summary judgment is not proper when an issue turns on credibility.").

The issue of causation is ordinarily a question for the jury, but if the facts are undisputed and reasonable minds could draw but one inference from them, causation is a question of law for the court. *See Moon v. Platte Valley Bank*, 634 P.2d 1036, 1038 (Colo. App. 1981).

Defendants argue that there is "[n]o genuine issue of material fact . . . to support that any action of Defendant Mr. Miser was the proximate cause of the accident and [Plaintiff's] alleged injuries." (ECF No. 39 at 10.) In particular, Defendants contend that Miser's lane change 23 miles prior to the accident was not a proximate cause of the accident. (*Id.* at 12.) They likewise argue that even if Miser changed lanes just prior to the accident, Miser should not have reasonably foreseen that Kanafani would have been traveling at 111 miles per hour while under the influence. (*Id.* at 12–13.) According to Defendants, Kanafani's speed and intoxication "constitute an intervening cause breaking the natural or continued sequence necessary to establish proximate cause." (*Id.* at 13.)

Kanafani's affidavit creates a material dispute of fact that precludes a determination on summary judgment that Miser was not a proximate cause of Plaintiff's injuries. It is possible—and perhaps even probable—that a reasonable jury will determine that Miser was not a proximate cause of Plaintiff's injuries on the basis that Kanafani's speed and intoxication are an intervening cause of the accident. However, to the extent a jury believes Kanafani's statement that Miser made a "sudden and quick lane change" that forced Kanafani to swerve out of the way (ECF No. 58-1), a jury could determine that Miser was a proximate cause of Plaintiff's injuries.

### C. Negligence Per Se Claim

Plaintiff has asserted a negligence per se claim against Miser, alleging that Miser violated two statutes: (1) Careless Driving, Colo. Rev. Stat. § 42-4-1402, and (2) Driving on Roadways for Traffic, Colo. Rev. Stat. § 42-4-1007.[6] (ECF No. 7 ¶¶ 45–51.)

Defendants argue that Plaintiff has failed to state a prima facie negligence per se claim for the same reasons they discussed in connection with Plaintiff's common law negligence claim. (ECF No. 39 at 15–18.) Accordingly, the Court must deny summary judgment as to Plaintiff's negligence per se claim for the same reasons stated in Part III.B.[7]

### D. *Respondeat Superior* / Agency Claim

Plaintiff has asserted that Defendant C.R. England is vicariously liable for Miser's negligence based on the doctrines of *respondeat superior* and/or agency. (ECF No. 7 ¶¶ 52–57.)

---

[6] Colorado Revised Statute § 42-4-1402(1) provides that "A person who drives a motor vehicle, bicycle, electrical assisted bicycle, electric scooter, or low-power scooter in a careless and imprudent manner, without due regard for the width, grade, curves, corners, traffic, and use of the streets and highways and all other attendant circumstances, is guilty of careless driving."

Colorado Revised Statute § 42-4-1007(1) provides that "Whenever any roadway has been divided into two or more clearly marked lanes for traffic . . . (a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

[7] Defendants also argue that to the extent the negligence per se claim is based on the careless driving statute, it is duplicative of Plaintiff's common law negligence claim and should be dismissed. (ECF No. 39 at 16.) The case Defendants cite in support of this proposition, however, discusses only that a court generally does not need to instruct a jury about the statutory standard of care alongside a common law negligence instruction. *See Silva v. Wilcox*, 223 P.3d 127, 136 (Colo. App. 2009). It does not instruct a court to dismiss a negligence per se claim on summary judgment on the basis that it is duplicative of a common law negligence claim. At any rate, the Court need not resolve this dispute at this stage because Plaintiff also

Defendants recognize that Plaintiff's claim of *respondeat superior* / agency are "dependent on the alleged employee's tortious acts." (ECF No. 39 at 18.) Because the Court has denied summary judgment as to Plaintiff's negligence and negligence per se claims against Miser, the Court must also deny summary judgment as to Plaintiff's *respondeat superior* / agency claim against C.R. England.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS that Defendants' Motion for Summary Judgement (ECF No. 39) is DENIED.

Dated this 24th day of February, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge

---

bases his negligence per se claim on the driving on roadways laned for traffic statute.